Lloyd D. BLAYLOCK, General Contractor, Inc., et al., Appellants,

v.

DOLLAR INNS OF AMERICA, INC., et al., Appellees.

No. 984.

Court of Civil Appeals of Texas, Tyler.

.

Jan. 27, 1977.
Rehearing Denied March 17, 1977.

Bowen L. Florsheim, Smith, Smith, Dunlap & Canterbury, George C. Dunlap, Dallas, for appellants.

Alfred Sallinger, Saner, Jack, Sallinger & Nichols, T. Rick Frazier, Dallas, for appellees.

DUNAGAN, Chief Justice.

This is a mechanic's and materialman's lien priority case brought on appeal from the judgment of the 162nd Judicial District Court of Dallas County, Texas.

Lloyd D. Blaylock General Contractor, Inc. and Lloyd D. Blaylock, individually, (hereafter called "appellants") brought suit complaining against Dollar Inns of America, Inc. (hereafter called "Dollar Inns"), K. R. Riley and Diversified Mortgage Investors (hereafter called "appellee"). The controversy arose from the construction of two motels on separate lots located in Fort Worth and Irving, Texas. Dollar Inns contracted with appellants as general contractor for the construction of the motel. Dollar Inns obtained interim financing for the purchase of the lots and construction of the motels from Palomar Mortgage Investors (hereafter called "Palomar"). Palomar in exchange for its loans received Dollar Inns' promissory notes and secured same through deeds of trust covering the two properties and improvements (principally motels) to be built thereon. Palomar sold and assigned its security interests in the properties to appellee herein which, as prearranged through commitment agreements, was to provide permanent financing to Dollar Inns for the projects.

After construction of the motels was completed, appellants duly perfected their mechanic's liens pursuant to article 5452, et seq., Tex.Rev.Civ.Stat.Ann. Appellants filed this suit to recover the balance due them under the construction contract, for foreclosure of their mechanic's liens on the two properties and for an order of sale of the two properties. Appellants later joined appellees seeking a declaration that appellants' mechanic's liens were superior to the appellee's deed of trust liens on the properties, and that appellee's legal title to the two properties was burdened with appellants' mechanic's liens; and, in the alternative, that if the court found that appellants' liens were cut off by appellee's foreclosure, that appellants were entitled to recover the amount of their liens from the consideration received by appellee at foreclosure sale in excess of the purchase money loaned by appellee's assignor (Palomar).

While the suit was pending, Dollar Inns defaulted on the deeds of trust held by appellee. Appellee foreclosed on the deeds of trust and purchased the properties at its own foreclosure sale.

Appellee answered with a general denial and additionally plead, among other things, that it was an innocent purchaser for value, that the deed of trust liens against the properties were superior to appellants' liens, that the monies loaned by Palomar for the purchase of the properties were used to retire valid and superior liens existing on the properties, and that appellee was subrogated to Palomar's rights and priorities.

On February 21, 1975, an interlocutory summary judgment was granted to appellants against Dollar Inns and K. R. Riley. These two parties did not appeal the summary judgment against them and they are not parties to this appeal. They did not participate in the trial of this dispute.

The trial court rendered its judgment on January 15, 1976, after non-jury trial, finding in favor of appellee and holding that appellants were entitled to take nothing by their action against appellee. The judgment did incorporate the summary judgment granted against Dollar Inns and K. R. Riley. The court made findings of fact and conclusions of law. Appellants allege 18 points of error.

For clarity, the two properties will be referred to as the Fort Worth and Irving property, respectively. Due to differences in important dates concerning the inception and priority of the liens in question on each property, a detailed narration of the facts as to each is required. Prior to trial, appellants and appellee entered into extensive stipulations which greatly reduced the complexity of the dispute for the trial court.

In either October or November of 1972, Dollar Inns entered into negotiations with appellants for the construction of two motels on the two tracts of land yet to be purchased by Dollar Inns. Dollar Inns entered into a contract of sale to purchase the Fort Worth Property on December 11, 1972, and entered into a contract of sale to purchase the Irving property on January 22, 1973. In late December appellants and Dollar Inns entered into a preliminary written agreement whereby appellants agreed to

construct the motels pursuant to a general construction contract to be executed at a later date. Dollar Inns at that time directed appellants to begin work immediately on both projects. Dollar Inns had not yet closed the sales of the two properties.

During this same period of time Dollar Inns was negotiating with Palomar for interim financing of the projects. Dollar Inns was seeking package financing for purchase of the properties and construction of the motels thereon. On February 16, 1973, Dollar Inns and Palomar entered into two loan agreements whereby Palomar agreed to loan Dollar Inns the funds necessary for the purchase of both properties and construction of the motels.

It appears from the loan agreements (which were stipulated into evidence and contained in the record) and from appellants' and appellee's briefs that appellee was involved in the entire loan transactions as early as November 10, 1972; that Palomar was to provide interim financing; that through a "commitment" issued by appellee and through a "Tri-Party Agreement" executed with Palomar and Dollar Inns appellee was to provide permanent financing to Dollar Inns; that it was agreed and understood by all parties that the loan proceeds were to be used for the purchase of the properties and construction of the motels to be located thereon.

The loan agreements were controlling over the provisions in the notes and deeds of trust executed pursuant to the loan agreements. The control given Palomar by the loan agreements was very extensive, providing, among other things, that: (1) Palomar's duty to make loan disbursements was to be coordinated with progressive reports on the stage of construction as well as Dollar Inns's disbursements to the contractor; (2) Palomar was to receive monthly progress reports on the stage of construction accompanied by architect and engineer certificates where applicable; (3) all requests by Dollar Inns for disbursements were to be accompanied by proof as to paid and unpaid construction bills, lien waivers for all work and materials as required by the title company, and current status reports of the contractor's accounts; (4) Palomar had the right of entry at all times for inspection of the improvements; (5) use of the loan proceeds were to be used strictly for purposes specified in the loan agreement, said purposes chiefly consisting of construction of the motels; and (6) Palomar had the right to take control of the properties to effect completion of the motels.

It should also be noted that Palomar had actual notice that appellants had been engaged as general contractor, as shown by a letter dated February 19, 1973, from appellants to Palomar. In that letter appellants formally notified Palomar that they were the general contractor for the projects, that appellants agreed to continue construction at Palomar's request in the event Dollar Inns defaulted on its notes and obligations, and that all work done on Palomar's request after default was conditioned on appellants being reimbursed in accordance with the construction agreement. Appellants further agreed that no changes in work resulting in a change of contract price would be made without Palomar's written approval of the change order.

As mentioned earlier, appellants began work at Dollar Inns' urging subsequent to the execution of Dollar Inns' contracts of sale but prior to the actual closings of the purchase transactions. Although the relevant facts concerning both the Fort Worth and Irving job sites are basically the same, there is some variance, particularly as to dates. Therefore, the course of events as to each job site will be presented below separately.

## FORT WORTH PROJECT

The first on-site work on the Fort Worth property consisted of a subsurface investigation and testing of the soil which was performed by an engineering subcontractor of appellants. The work included the drilling of core borings and was performed prior to January 24, 1973. On January 25, 1973, another subcontractor began survey work and the placing of various stakes and iron rods to locate drives, grades, building sites,

and other locations. On that date materials in the form of bundles of engineering stakes were delivered to the job site. By March 1, 1973, approximately 150 wooden stakes and 8 iron rods had been placed at various locations on the property. The stakes and iron rods were driven vertically into the ground, stood from one to three feet above ground level and existing vegetation, and some of the stakes were marked by the attachment of blue and orange ribbons. The trial court found that the work activities of this subcontractor were visible from an inspection of the land. On March 5, 1973, further construction materials in the form of lumber for the construction of batter boards were delivered to the Fort Worth property by appellants' own employees. Also on that date, appellants' employees began the erection of batter boards. The erection of these items was completed by March 9, 1973. Batter boards are used to mark the corners of each building being erected, and on the Fort Worth property there were eight separate batter boards. As found by the court, the batter boards and the act of erecting the batter boards on the Forth Worth site were all visible from an inspection of the land. Also on March 5, 1973, appellants' employees began to deliver truckloads of fill dirt to the Fort Worth property and also began excavation work on the site. As with the other activities described, the court found that the fill dirt delivered and the activities related thereto were visible from an inspection of the job site. On March 9, 1973, a large sign painted on plywood was placed on the Fort Worth property carrying words to the effect that a new motel was being constructed for Dollar Inns.

## IRVING PROJECT

The course of events on the Irving job site is essentially the same as that on the Fort Worth job site. Bundles of stakes were delivered to the Irving job site on January 25, 1973, and the survey work was begun. By March 1, 1973, approximately 150 wooden stakes had been placed at various locations on the Irving site marking grades, drives, building sites, and other lo-

cations. Again, the court found that these stakes and the related survey activities were visible from an inspection of the land. On March 5, 1973, a sign similar to the one erected on the Fort Worth property was erected on the Irving property. The trial court found that this sign was visible from an inspection of the land. On March 25, 1973 lumber for batter boards was delivered and their construction was begun. The batter boards were finished by April 2, 1973. The court found that the work done, as well as the completed batter boards themselves, were visible on an inspection of the land. On April 7, 1973, other materials in the form of sections of concrete pipe were delivered to the Irving property.

The two motels in question were subsequently completed in 1973, and appellants duly perfected their mechanic's liens on both properties. In 1974 Dollar Inns failed to pay the balance remaining on its contract with appellants and appellants filed suit against Dollar Inns and K. R. Riley, seeking judgment and foreclosure of its mechanic's liens on both properties.

As mentioned earlier, Dollar Inns defaulted on its deeds of trust after appellants filed suit. By that time Palomar had assigned its interests to appellee to provide permanent financing, receiving $2,757,-150.00 as the consideration for the assignment. Appellee foreclosed its deed of trust liens on both properties together with the motels located thereon and purchased same at its own foreclosure sales, paying $600,-000.00 for the Fort Worth property and $1,200,000.00 for the Irving property.

The facts relating to the creation of appellee's deeds of trust are as follows:

## FORT WORTH PROPERTY

Title to the Fort Worth property was held by J. M. Loffland, Trustee, prior to its conveyance to Dollar Inns. On December 11, 1972, Dollar Inns (acting through K. R. Riley) and Loffland entered into a contract of sale covering the property in Fort Worth. The purchase price was $135,000.00 and Dollar Inns paid $10,000.00 in earnest money to be applied toward the total price at closing.

The transaction was closed on March 8, 1973. At that time, the Fort Worth property was free and clear from any liens. Palomar through a title company paid $598,-352.45 to Dollar Inns, of which amount $135,000.00 was purchase money for Dollar Inns' acquisition of title to the Fort Worth property. In return Dollar Inns delivered its promissory note and deed of trust to the Fort Worth property, the note being in the amount of $1,200,000.00. The record does not indicate when, if ever, Dollar Inns received the balance of the loan (the amount of the note less the $598,352.45 paid by Palomar on March 8, 1973). It is proper to mention here that the price of the Irving property ($309,900.00) was also paid out of the $598,352.45. The loan proceeds less the purchase money were to be used toward construction of the motel.

The deed of trust covering the Fort Worth property was filed and recorded on March 9, 1973.

### IRVING PROJECT

Title to the Irving property was held by the First Madison Corporation prior to its conveyance to Dollar Inns. On January 18, 1973, Dollar Inns and First Madison Corporation entered into a contract of sale covering the Irving property. The total purchase price was $309,900.00 of which $200,-000.00 was paid by Dollar Inns as earnest money on January 18, 1973. The Irving transaction was closed on April 5, 1973. At the time of closing, the Irving property was subject to a prior mortgage lien held by the First Bank and Trust of Richardson, which lien was released by said bank on April 5, 1973. The parties stipulated in relation to this prior mortgage lien that "no assignment or other transfer of any existing lien was made upon purchase of the Irving Property by Dollar Inns of America, Inc." The trial court held, however, that appellees were equitably subrogated to the lien rights of the Richardson bank.

As previously mentioned, Palomar paid Dollar Inns the $309,900 out of the balance of the $598,352.45 remaining after the Fort Worth transaction was closed. Of the $309,900, the amount of $109,900.00 was paid to First Madison Corporation as the balance of the purchase price, and $200,-000.00 was paid to Dollar Inns as a refund of the funds previously paid by it as earnest money on the Irving property contract of sale.

In return, Dollar Inns delivered its promissory note and deed of trust to the Irving property, the note being in the amount of $1,665,000.00. The record does not indicate when, if ever, Dollar Inns received the balance of the loan proceeds which were to be used toward construction of the motel.

The deed of trust covering the Irving property was filed on April 12 and recorded on April 13, 1973.

The foregoing is a summary of the various events, activities and dates that are relevant to the issues in this case. The following chronological summary presentation of the most pertinent events is presented as to both the Fort Worth and Irving job sites:

### FORT WORTH

| Date | Event |
|---|---|
| December 11, 1972 | Dollar Inns contracts to purchase Fort Worth property |
| December 29, 1972 | Appellants and Dollar Inns enter into preliminary construction agreement |
| Early January, 1973 | Rone Engineering conducts on-site subsurface soil investigation |
| January 25, 1973 | a. Delivery of bundles of wooden engineering stakes to site<br>b. Topographical survey work begins on site |
| February 16, 1973 | Dollar Inns and Palomar execute loan agreement |
| February 21, 1973 | Appellants and Dollar Inns execute final construction agreement |
| March 1, 1973 | Approximately 150 engineering stakes have been placed at various points on job site |
| March 5, 1973 | a. Delivery of lumber to job site<br>b. Appellants' employees begin erection of batter boards on job site<br>c. Appellants begin delivery of fill dirt to job site and begin excavation work |
| March 8, 1973 | a. Dollar Inns completes purchase of Fort Worth property and delivers deed of trust to Palomar<br>b. Palomar loans Dollar Inns $135,000.00 |

| March 9, 1973 | a. Palomar records deed of trust on Fort Worth property |
| | b. Erection of batter boards completed on or before this date |
| | c. Large sign denoting motel construction erected at job site |

IRVING

| December 29, 1972 | Appellants and Dollar Inns enter into preliminary construction agreement |
| January 18, 1973 | Dollar Inns contracts to purchase Irving property |
| January 25, 1973 | a. Delivery of bundles of wooden engineering stakes to site |
| February 16, 1973 | Dollar Inns and Palomar execute loan agreement |
| February 21, 1973 | Appellants and Dollar Inns execute final construction agreement |
| March 1, 1973 | Approximately 150 engineering stakes have been placed at various points on job site |
| March 5, 1973 | Large sign denoting motel construction erected at job site |
| March 26, 1973 | a. Appellants deliver lumber to job site |
| | b. Appellants' employees begin erection of batter boards on job site |
| April 2, 1973 | Erection of batter boards completed |
| April 5, 1973 | a. Appellants' subcontractors begin delivery of fill dirt to Irving site |
| | b. Excavation and site clearing begins |
| | c. Dollar Inns completes purchase of Irving property and delivers deed of trust to Palomar |
| April 12, 1973 | Palomar's deed of trust is filed with County Clerk |
| April 13, 1973 | Palomar's deed of trust recorded in county records |

There is no question in this case as to the validity of appellants' mechanic's liens on either of the properties involved. The main issue here is one of priority of liens.

The lien priority issue in this case hinges on the interpretation and effect of Article 5459, Tex.Rev.Civ.Stat.Ann. Section 1 of Art. 5459 reads in part as follows:

"The [mechanic's and material man's] lien herein provided for shall attach to the . . . building, improvements . . . for which they were furnished or the work was done, in preference to any prior lien or encumbrance or mortgage upon the land upon which the . . buildings or improvements . . .

have been put, or labor performed, and the person enforcing the same may have such . . . building or improvement . . . sold separately; provided, any lien, encumbrance or mortgage on the land or improvement at the time of the inception of the lien herein provided for shall not be affected thereby, and holders of such liens need not be made parties in suits to foreclose liens herein provided for."

Article 5452 establishes four basic criteria by which the inception date of any mechanic's lien may be determined, which are:

(1) The commencement of construction of improvements so long as such construction is actually visible from inspection of the land; or

(2) The delivery of materials to the land upon which improvements are to be located for use thereon provided such material is actually visible from an inspection of the land; or

(3) The recording in the mechanic's lien records of the county in which the land is located of the written agreement for the construction of the improvements; or

(4) The recording in the mechanic's lien records of the county in which the land is located of an affidavit stating that the lien claimant has entered into an agreement with the owner of such property or with the owner's contractor or subcontractor for the construction of improvements thereon.

The latter two criteria are not in issue here since appellants did not record the written construction agreement nor any agreement affidavit. Under the first and second criteria, this court must determine whether the work done and materials delivered by appellants prior to the fixing of appellee's deed of trust liens on the properties constituted "commencement of construction" and "delivery of material" as those terms are used in art. 5459, thereby establishing an effective inception date of appellants' mechanic's liens before the inception of appellee's deed of trust liens.

Appellants contend that the work done prior to the effective date of appellee's liens

did constitute commencement of construction, and that the materials delivered in that same time frame did constitute "delivery of materials" as that term is used in Art. 5459. The trial court concluded, and appellee so asserts, that as a matter of law the work done did not constitute commencement of construction nor was there "delivery of material" as those terms are used in the statute. We disagree.

We have been unable to locate any Texas case setting forth a clear standard as to what constitutes "commencement of construction" or "material." We feel that any consideration of this matter is best left to an analysis of the facts in each particular case, for the following reason. Art. 5459 provides that such commencement of construction or delivery of material must be "actually visible from inspection of the land upon which the improvements are being made." Thus, we feel that the chief inquiry to be made by the courts is whether there was visibility of commencement of construction such that a person, upon inspection of the land, would be put on notice that construction work had commenced or, because of material delivered and resting on the land, work was to commence shortly thereafter.

We have found only one Texas case dealing marginally with this issue, that of *Justice Mort. Inv. v. C. B. Thompson Const. Co.*, 533 S.W.2d 939 (Tex.Civ.App.—Amarillo 1976, ref'd n. r. e.). The Amarillo Court of Civil Appeals relied on 1 A.L.R.3d 822, as does appellee in this case, in following a majority of states that have had the opportunity to judicially delineate a standard for "commencement of construction." Those states have generally held that the work done must amount to commencement of construction of a component part of the structure being built.

1 A.L.R.3d 824, 825 states:

"The cases apparently illustrate that the courts have not been bound by any strict rule of law in determining whether the work done on the premises is sufficient to amount to the commencement of the building within the meaning of the

mechanic's lien law, but have examined all the circumstances in the case to make sure that they are satisfied that it is apparent from the work done that the construction of a building is underway."

We feel, and the trial court so found, that the work done on both properties in this case in the time prior to the inception of appellee's deed of trust liens was visible, and that in light of the facts the work did constitute commencement of construction of a character sufficient to establish an inception date for appellants' mechanic's liens prior to the inception of appellee's liens.

The meaning of "materials" concerning delivery thereof may best be found in the definition of materials under art. 5452, section 2(b), Tex.Rev.Civ.Stat.Ann., which states that material is "to be construed to mean any part or all of the following: (1) material, machinery, fixtures or tools incorporated in the work, or consumed in the direct prosecution of the work, or ordered and delivered for such incorporation or such consumption." This article in section 2(d) defines work as "any construction or repair, or any part thereof, which is performed pursuant to an original contract . . . ." We hold that stakes, iron rods, concrete pipe and lumber for batter boards does constitute material as that term is defined, and as such further establishes that appellants' liens had their inception prior to the inception of appellee's liens. This interpretation comports with the general rule in Texas that the mechanic's lien statutes are to be liberally construed for the purpose of protecting laborers and materialmen. *Hayek v. Western Steel Co.*, 478 S.W.2d 786 (Tex.1972). Appellants' points of error, 3, 4 and 5 are sustained.

The above issues decided, we now consider appellants' points of error 1 and 2 wherein appellants allege that the trial court erred in concluding that any vendor's or purchase money lien on the Irving property was prior and superior to appellants' mechanic's liens *regardless* of the inception of appellants' mechanic's liens. Appellants

contend that their mechanic's liens are, as a matter of law, prior and superior to any purchase money mortgage or vendor's lien on the Irving property, and that the trial court's conclusion contravenes Article 5459 quoted above.

The result of our ruling under appellants' points of error 3, 4 and 5 is to hold that appellants' mechanic's liens had their inception prior to the time that Dollar Inns was deeded both properties, and thus existed prior to the time that appellee's deed of trust liens were created. Appellants contend that a literal interpretation of Art. 5459 provides that regardless of the type of lien created after the inception of their mechanic's liens, said mechanic's liens are superior and have priority over any type of lien created after the inception date of the mechanic's liens and are not cut off by foreclosure and sale of any subsequent lien. Appellants urge these points in its points of error 1, 2, and 6.

Appellee contends that purchase money mortgage liens and/or vendor's liens are superior to any mechanic's lien regardless of the inception date of the latter.

Confusion exists due to the apparent conflict between Art. 5459 and the Supreme Court case of *Irving Lumber Co. v. Alltex Mort. Co.*, 468 S.W.2d 341 (Tex.1971) in which Justice McGee wrote a dissenting opinion joined by Justices Denton and Daniel. Even though Art. 5459 has been amended since rendition of the *Irving* case, the basic priority provisions of Art. 5459 were not changed. The *Irving* case is the most convincing authority in support of appellee's argument that a purchase money lien has priority over a mechanic's lien regardless of the inception date of the latter. In that case the mechanic's lien holder relied on its oral construction agreement to establish the inception date of its mechanic's lien prior to the time that the borrower-developer acquired title to the property on which the improvements were made. Contemporaneously with his acquiring title, the borrower-developer conveyed the property through deed of trust to secure the loan made by Alltex Mortgage Company. All-

tex later foreclosed before the mechanic's lien holder foreclosed. The Supreme Court held that the mechanic's lien was cut off for the reason that Alltex's deed of trust lien was a purchase-money lien, and that even though it was created subsequent to the inception date of the mechanic's lien, it was entitled to priority. Alltex loaned a total of $137,850 of which $10,600 was used as actual purchase money. Whether the mechanic's lien holder was entitled to pursue a portion of the proceeds of the foreclosure sale in the hands of Alltex was not raised in the case.

■ The Supreme Court based its decision on the rule of law in Texas that a lien is impressed with the character of the indebtedness for which it was given to secure, citing *National Western Life Ins. Co. v. Acreman*, 415 S.W.2d 265 (Tex.Civ.App.— Beaumont 1967, modified 425 S.W.2d 815). Since part of the loan proceeds in the *Irving* case was purchase money, the entire lien was given purchase money status and thus priority to the extent that foreclosure cut off the mechanic's lien. The court's opinion further provided that a mechanic's lien could not antedate ownership of the property, and that where a purchase money deed of trust was executed contemporaneously with the vesting of title in the mortgagor, then the purchase money deed of trust lien would have priority over a mechanic's lien since the title of the mortgagor was burdened instantly with the purchase money deed of trust lien before the mechanic's lien attached to the mortgagor's title.

■ Although an express vendor's lien was reserved only on the Irving property in this case, the courts in the *National Western Life Ins. Co.* case, *supra*, and the *Irving Lumber Co.* case, *supra*, and other cases apparently make no distinction between an express vendor's lien and a purchase-money mortgage deed of trust lien. The obvious distinction that exists is that in a vendor's lien situation, the vendor retains a security interest securing the purchase money debt, whereas under the modern purchase-money mortgage deed of trust situation, a lending company loans the purchase money to a

vendee who conveys the property in trust to secure the repayment of the purchase money. The vendor is out of the picture so to speak, but the lending agency retains the paramount rights of the vendor. This is in accord with the previously stated rule that a lien is impressed with the character of the debt it is given to secure, and if given to secure purchase money, it has the status of a purchase-money lien. *Thompson v. Litwood Oil & Supply Co.*, 287 S.W. 279 (Tex. Civ.App.—Waco 1926, no writ); *C. D. Shamburger Lumber Co. v. Holbert*, 34 S.W.2d 614 (Tex.Civ.App.—Amarillo 1931, no writ); *National Western Life Ins. Co.*, supra; *Irving Lumber Co.*, supra.

■ We are bound by the majority opinion in *Irving Lumber Co.* and feel that its effect is controlling here. Under the Supreme Court's ruling we are obligated to decide lien priorities in similar cases accordingly, regardless of its apparent conflict with Art. 5459, Tex.Rev.Civ.Stat.Ann. Therefore, appellants' points of error 1, 2, and 6 are overruled.

■ Appellants next contend that the court erred in concluding that the inception dates of the Dollar Inns to Palomar deeds of trust were, as to appellants, effective on the actual dates of closing, and further erred in concluding that appellants were placed on inquiry notice of the actual dates of said closings. Although in light of our holding above, this point is not determinative of this case, it is a basic principle of Texas law that the inception, creation and attachment of mechanic's liens are matters of law and statute and have nothing to do with notice of other liens or instruments arising *subsequent* to the inception date of a mechanic's lien. See Art. 5452, et seq., Tex.Rev.Civ.Stat.Ann. Furthermore, "Every . . . deed of trust or mortgage . . . when delivered to the clerk of the proper court to be recorded shall take effect and be valid . . . as to all creditors from the time when such instrument shall have been so acknowledged, proved or certified and delivered to such clerk to be recorded, and from that time only." Art. 6631, Tex.Rev.Civ.Stat.Ann. Accordingly,

the trial court erroneously concluded that appellants were placed on inquiry notice of the actual dates of closing and that appellee's liens were effective as to appellants from said dates of closing.

■ Appellants also allege that the court erred in concluding that appellee is equitably subrogated to the lien rights previously held by First Bank and Trust of Richardson on the Irving property. At the time of closing, the Irving property was subject to a prior vendor's lien held by the First Bank and Trust of Richardson. This prior lien was fully released and Palomar did not take by written assignment any interest in the prior lien. Nevertheless, appellants' point of error is overruled. The doctrine of subrogation is given a liberal interpretation to protect parties who are not mere volunteers. *McBroome-Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32, 36 (Tex.Civ.App.—Dallas 1974, ref'd n. r. e.). It has long been the law of this state that one who has advanced money with an understanding or under circumstances giving rise to an understanding that his advancement shall be secured by a first lien upon the property is not a mere volunteer and should be subrogated to the prior liens so discharged. *Whiteselle v. Texas Loan Agency*, 27 S.W. 309 (Tex.Civ.App.—1894, writ ref'd); *Sanger Bros. v. Ely & Walker Dry Goods Co.*, 207 S.W. 348 (Tex. Civ.App.—Fort Worth 1918, writ ref'd); *Lewis v. Investors Sav. Ass'n*, 411 S.W.2d 794 (Tex.Civ.App.—Fort Worth 1967, no writ). Accordingly, appellee through its assignment from Palomar is equitably subrogated to the vendor's lien rights of the Richardson bank.

Appellants' last 6 points of error shall be dealt with collectively. Appellants allege therein that there was no evidence to support the court's finding that Palomar advanced to Dollar Inns the sums of $1,220,-000 and $1,665,000 on the Fort Worth and Irving properties respectively and for the further reason that the evidence establishes that Palomar loaned only the sum of $135,-000.00 to Dollar Inns on the Fort Worth property and $309,900.00 on the Irving

property, and that the court erred in concluding that appellee had superior deeds of trust liens on the Fort Worth property to the extent of $1,220,000.00 and on the Irving property to the extent of $1,665,000.00. Appellants' last point of error alleges that the court erred in failing and refusing to award appellants judgment and money damages against appellee in the total amount of $204,776.29 against and based upon the consideration received by appellee at foreclosure on both properties in excess of any purchase money loaned on and secured by said properties.

The record is replete with evidence to indicate the exact amounts loaned by Palomar to Dollar Inns. Although the record reveals that as to actual transfer of funds only checks representing purchase money were delivered to Dollar Inns, the record contains loan agreements, promissory notes and deeds of trust securing same. All were executed by Dollar Inns. These instruments, together with the fact that the motels were completed, gives us no hesitancy in finding, as the trial court did, that Palomar at the closings advanced the purchase money and, according to the loan agreements, made periodic advancements of the entire loan proceeds as the construction of the motels progressed and was completed stage by stage. We hold that the court's findings are supported by evidence in the record, evidence which was stipulated to by both parties.

However, the court erred in concluding that appellee had superior deeds of trust liens to the extent of the entire loan amounts, and furthermore erred in refusing appellants' pleading that it was entitled to satisfy its liens against the consideration received by appellee in excess of the actual purchase money loaned on the properties.

Appellee held deed of trust liens that were superior to appellants' mechanic's liens only to the extent of purchase money loaned on the properties. To so hold does not conflict with the opinion of the Supreme Court of Texas in *Irving, supra.* The *Irving* case did hold that mechanic's and materialman's liens were cut off by

foreclosure of a superior purchase money mortgage. The Supreme Court immediately thereafter stated:

"Whether Irving was then entitled to pursue a portion of the proceeds of the sale in the hands of Alltex is not raised in this case, because the only issue [here] is whether Irving was entitled to foreclose its lien on the land following the foreclosure under the deed of trust."

Although appellants' mechanic's liens were cut off by appellee's foreclosure, they are entitled to have their liens satisfied out of the consideration received by appellee in excess of the purchase money loaned by appellee's assignor, Palomar.

A similar situation existed in *Habitat, Inc. v. McKanna*, 523 S.W.2d 787 (Tex.Civ. App.—Eastland 1974, no writ). In that case the mortgagee held a $450,000 deed of trust lien against property upon which a contractor held a mechanic's and materialman's lien. Of the total amount of $450,000 which the deed of trust lien secured, only $64,000 was purchase money expended by the owner in acquiring the property. The Eastland Court of Civil Appeals held:

"The trial court held, however, that only that portion of the $450,000 deed of trust representing the prior purchase money lien was superior to plaintiff's [mechanic's and materialman's] lien since the deed of trust was recorded subsequent to Plaintiff's visible commencement of work. Even though the foreclosure extinguished plaintiff's lien, he is, we think, nevertheless entitled to recover money damages from the mortgagee if at such time the mortgagee received consideration in excess of the $64,000 purchase money lien."

The trial court found in this case that of the total loaned on the Fort Worth property, $135,000 was paid as the purchase price of the land and of the total loaned on the Irving property, $309,900 was paid as purchase price of the land. The consideration received by appellee at the foreclosure sale of the two properties was $600,000 for the Fort Worth property and $1,200,000 for the Irving property. The total amount of

consideration received by appellee in excess of purchase money loaned on the two properties respectively is $1,355,100.00. We hold that appellants are entitled to recover money damages against appellee in the amount of their mechanic's liens.

When Palomar assigned its interests to appellee, the appellee paid $2,757,150.00 for Palomar's lien rights. Palomar's lien rights were superior to appellants' lien rights only to the extent that the deed of trust liens secured purchase money. Thus, the appellee's lien rights, as the assignee of Palomar, were likewise limited in superiority over appellants' mechanic's and materialman's liens. To hold otherwise would make Art. 5459, Tex.Rev.Civ.Stat.Ann., a meager vehicle for protecting the legislative and constitutionally mandated rights of mechanic's and materialman's lien holders.

Appellee can hardly contend that it was an innocent purchaser for value without notice of any prior existing liens, and did not urge such contention on appeal. Appellee, as mentioned earlier, was involved in the entire transaction at least from the early loan agreements. At the time that appellee was assigned Palomar's interests, the mechanic's liens of appellants had been perfected. Further, appellee purchased the properties at its own foreclosure sale.

That portion of the judgment of the trial court wherein appellants take nothing against Diversified Mortgage Investors is reversed; judgment is here rendered that appellants recover $204,776.29 from Diversified Mortgage Investors, which judgment shall be joint and several with the final judgment of the trial court against Dollar Inns of America, Inc. and K. R. Riley, individually.

Reversed and rendered.

## SUPPLEMENTAL OPINION

In response to appellee Diversified Mortgage Investors' second motion for rehearing filed on March 3, 1977, the supplemental opinion heretofore delivered and the amended judgment entered on February 24, 1977, is withdrawn. This supplemental opinion is substituted for the original supplemental opinion.

It has been called to our attention that in our supplemental opinion delivered February 24, 1977, we applied an erroneous rate of interest on the $204,776.29 judgment rendered in favor of Lloyd D. Blaylock General Contractor, Inc. and Lloyd D. Blaylock Individually against Diversified Mortgage Investors. We hereby amend the original judgment dated January 27, 1977, to expressly provide that interest on the $204,776.29 in favor of Lloyd D. Blaylock General Contractor, Inc. and Lloyd D. Blaylock Individually against Diversified Mortgage Investors shall accrue at the rate of 9% per annum from January 15, 1976, which judgment shall be joint and several with the final judgment of the trial court against Dollar Inns of America, Inc. and K. R. Riley, individually. Rule 434, T.R.C.P.; *American Paper Stock Company v. Howard*, 528 S.W.2d 576 (Tex.1975); Art. 5069–1.05, Tex.Rev.Civ.Stat.Ann.

In this respect the motion is granted and in all other respects overruled.