M. KANGERGA & BRO. v. WILLARD et ux. (No. 1680.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 1, 1916. Rehearing Denied Dec. 21, 1916.)

1. CANCELLATION OF INSTRUMENTS ☞37(5)—PLEADING.

One seeking judicial annulment of a contract on the ground it is not permitted by law must allege facts which disclose its unlawful character.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 68, 74, 77, 79, 80; Dec. Dig. ☞37(5).]

2. HOMESTEAD ☞133 — MORTGAGE — ANNULMENT—PLEADING.

In a suit to cancel deeds as a mortgage upon homestead, it was for plaintiff to allege facts showing the mortgage was one not permitted by the constitutional provision on that subject (Const. art. 16, § 50).

[Ed. Note.—For other cases, see Homestead, Dec. Dig. ☞133.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

3. BILLS AND NOTES ⊜═112—VALIDITY—IN-
CUMBRANCE.
"Notes for which the consideration was the
principal and interest paid by the payee on the
purchase-money debt on the maker's homestead
and for money and material furnished to make
improvements on the homestead prior to the
date of the notes, were not invalid, although
the effort of the parties to create a lien upon
the homestead for the entire debt evidenced by
the notes was ineffectual because a part of the
real consideration was something for which the
homestead could not be incumbered; a mortgage
upon a homestead not being an immoral contract
nor one which violates any penal statute.
[Ed. Note.—For other cases, see Bills and
Notes, Cent. Dig. § 222; Dec. Dig. ⊜═112.]

4. HOMESTEAD ⊜═96 — INCUMBRANCE —
RIGHTS OF MORTGAGEES.
To the extent that the consideration express-
ed in notes secured by mortgage on a homestead
represents the original purchase-money debt due
on the homestead, they express a valid lien on
the homestead.
[Ed. Note.—For other cases, see Homestead,
Cent. Dig. §§ 147–153; Dec. Dig. ⊜═96.]

5. SUBROGATION ⊜═23(6)—PAYMENT OF DEBT
—LIEN ON HOMESTEAD.
One paying for the vendee the purchase mon-
ey due upon a homestead takes by an equitable
assignment, if not by an actual transfer, the
debt which he discharges, and is subrogated to
the lien of the vendor.
[Ed. Note.—For other cases, see Subrogation,
Cent. Dig. § 64; Dec. Dig. ⊜═23(6).]

6. HOMESTEAD ⊜═96—LIENS—RENEWAL.
If the debt owed to one for his payment of
the purchase money on a homestead is extended
by giving him new notes, the old lien may be
perpetuated without loss of validity.
[Ed. Note.—For other cases, see Homestead,
Cent. Dig. §§ 147–153; Dec. Dig. ⊜═96.]

7. SUBROGATION ⊜═41(8) — INCUMBRANCE —
FORECLOSURE—JUDGMENT.
Where at time of execution of notes for $3,-
000 secured by mortgage on maker's homestead
there was due to payees $1,600, the balance of
what they had previously paid for the maker up-
on his purchase-money notes for the homestead,
the payees, in suit to enforce the notes, were en-
titled to judgment foreclosing the vendor's lien
for $1,600, together with the interest and at-
torney's fees stipulated in the original purchase-
money notes.
[Ed. Note.—For other cases, see Subrogation,
Cent. Dig. § 117; Dec. Dig. ⊜═41(8).]

8. HOMESTEAD ⊜═96—MORTGAGE—CONSIDER-
ATION—VENDOR'S LIEN.
Where the consideration for a mortgage on
a homestead was in part the balance of the orig-
inal purchase money, the validity of such mort-
gage to the extent that it represented such bal-
ance was not affected by change in the form of
the obligation.
[Ed. Note.—For other cases, see Homestead,
Cent. Dig. §§ 147–153; Dec. Dig. ⊜═96.]

9. HOMESTEAD ⊜═96 — LIEN FOR IMPROVE-
MENTS.
Under Const. art. 16, § 50, providing that no
mortgage on the homestead for improvements
shall be valid unless for work and labor con-
tracted for in writing consented to by the wife,
that part of a mortgage which represented mon-
ey and material furnished for improvements
put on the premises after the homestead right
had attached and prior to the mortgage was not
a valid lien for such improvements, notwith-
standing the mortgagees were holders of the ven-
dor's lien on the homestead when such improve-

ments were made, since this did not make them
the real owners of the property at that time;
for, although their legal title was superior, the
real beneficial owner was the vendee.
[Ed. Note.—For other cases, see Homestead,
Cent. Dig. §§ 147–153; Dec. Dig. ⊜═96.]

Appeal from District Court, Rusk County;
W. C. Buford, Judge.

Suit by G. O. Willard and wife against M.
Kangerga & Bro., in which defendants filed
cross-bill. From a judgment, defendants ap-
peal. Reversed, and remanded for new trial.

John R. Arnold and Futch & Tipps, all of
Henderson, for appellants. R. T. Jones and
C. L. Brachfield, both of Henderson, for ap-
pellees.

HODGES, J. This is a suit by the appel-
lees, Willard and wife, in which they seek to
have two deeds canceled upon the ground
that they were executed as a method of cre-
ating a mortgage upon their homestead. The
facts are substantially as follows: In Octo-
ber, 1907, G. O. Willard, one of the appellees,
purchased a tract of land in Rusk county
from D. F. Spivey, and gave in payment six
promissory notes aggregating $2,250. Each
note contained the usual stipulations for the
payment of interest at the rate of 8 per cent.
per annum and 10 per cent. attorneys' fees,
and the reservation of a vendor's lien to se-
cure their payment. The notes were so ar-
ranged as to mature in six annual install-
ments, beginning one year after their date.
Immediately following the purchase Willard,
together with his family, moved onto the
land, and has since occupied it as the family
homestead. The appellants at that time
were engaged in conducting a mercantile
business in the city of Henderson. In 1908
Willard began trading with appellants, and
purchased his family supplies from them
each year till the latter part of 1915. At the
end of each year the parties had some kind
of a settlement. Some years Willard's ac-
count was paid up in full, and at other times
a balance was carried over. In the fall Wil-
lard usually delivered his cotton to the appel-
lants, by whom it was purchased and credits
upon his account given accordingly. The ad-
vances made to Willard were usually secured
by a chattel mortgage on the crops to be
grown during the current year, and on his
stock. Willard and the appellants also had
an agreement by which the latter were to
take care of the interest and payments due
on the land notes given to Spivey. Appel-
lants paid the interest as it accrued, and un-
der an agreement with Willard paid the prin-
cipal also when Spivey demanded settlement.
Spivey was paid something during the year
1913. On December 3, 1913, Willard and his
wife executed and delivered to the appel-
lants a deed absolute in form conveying their
homestead for a recited consideration of the
cancellation of the Spivey notes. On the fol-

⊜═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

lowing day the appellants reconveyed the premises to Willard for a recited consideration of $3,000, evidenced by four promissory notes, two for $500 each, and two for $1,000 each, due in one, two, three, and four years from date, each bearing interest at the rate of 10 per cent. per annum from date and providing for the payment of 10 per cent. attorney's fees in the event they were collected by law. The purpose of the suit filed by the appellees is to cancel those two deeds.

The appellees' original petition alleges that those deeds were intended as a means of mortgaging the Willard homestead for an indebtedness claimed by the appellants, and "that in making the deed by the defendants to these plaintiffs defendants required the plaintiffs to give a note for $3,000 for a debt claimed to be due by these plaintiffs, and which note pretended to be a lien on the homestead of these plaintiffs purporting to be for the purchase money for said premises, when in truth and in fact the note was given for a pre-existing and pretended debt due by these plaintiffs to defendants."

The appellants answered by general and special exceptions and a general denial. In addition to these defenses the appellants alleged that they were the owners and holders of the six vendor's lien promissory notes theretofore executed by Willard to Spivey as the purchase price of the land in controversy; that these notes bore interest at the rate of 8 per cent. per annum from October 23, 1907, and also provided for 10 per cent. collection fees. The notes are fully described in detail in a manner that is unnecessary to repeat. It is further alleged that all of those notes had matured before December 3, 1913; that Spivey had executed to the appellants a deed conveying his interest in the notes and the lien evidenced thereby, and all right of title reserved by him as the grantor in the deed of conveyance to Willard; that on December 4, 1913, there was due the appellants on the notes the principal and accumulated interest, amounting to $2,587.35, no part of which had ever been paid; that on or about the 4th of December, 1913, the Spivey notes were canceled and the debt renewed by the giving of the four notes mentioned in the deed from defendants to the plaintiff Willard; that the conveyance from Willard to defendants and from defendants to Willard were executed in an effort to renew the past-due notes and to make a record of such renewal in order to prevent the lien and right of recovery from becoming barred. It is further alleged that on December 4, 1913, Willard executed and delivered to the defendants his four promissory notes aggregating $3,000. Then follows a detailed description of the notes, with their dates, terms, and provisions as to interest and attorney's fees. In that connection it is averred that the notes contained what is called a "default maturity clause," and that the defendants have de-

clared the whole of such notes to be due and unpaid because of the failure to pay the principal and interest on the matured notes. It is also alleged that by reason of the failure to pay the aforesaid notes and the bringing of this suit the defendants have been compelled to employ attorneys and sue on those notes, by reason of which they are entitled to the attorney's fees provided for.

Appellants also alleged that they are the legal owners and holders of the premises described in the plaintiffs' petition, and because of the failure to pay the notes at maturity they are entitled to the possession of the premises. But they say, if it should be determined they are not entitled to recover possession of the land, that they are entitled to the foreclosure of the vendor's lien and the contract lien which is thereafter set out. In addition to the foregoing as a basis for the consideration of the notes given by Willard to the appellants, they also plead that at the special instance and request of Willard, and under a valid contract, they furnished money and material to erect improvements on the premises to an amount aggregating in value $413.65. The cross-bill concludes with a prayer for general relief.

The appellees filed supplemental pleadings, which were followed by still other pleadings by the appellants not necessary to notice.

The following are the special issues submitted and the answers returned:

(1) "How much of the Spivey notes was still due and unpaid on December 4, 1913? Ans. $1,600."

(2) "Did the plaintiff direct that any of the proceeds of cotton sold by them to the defendant be applied to the payment of interest or the principal of the Spivey notes? Ans. Yes."

(3) "At what time were the improvements on the homestead finished? Ans. Prior to December 4, 1913."

(4) "Did the defendants, M. Kangerga & Bro., furnish to the plaintiffs any material or furnish any money with which material was bought or paid out for improvements on the homestead? If so, how much and at what time was it furnished? Ans. $413.65, furnished prior to December 4, 1913."

Upon these findings the court entered a judgment in favor of the appellees canceling the two deeds made in December, 1913, and the notes aggregating $3,000 given as the consideration in one of them. Judgment was then rendered in favor of the appellants for $1,600 as the balance due upon the original purchase-money notes given by Willard to Spivey, and for a foreclosure of a vendor's lien for that amount. Interest was allowed only from date of the judgment. A personal judgment was also awarded in favor of the appellants against Willard for the sum of $413.65, but no lien for that amount was found or foreclosed.

[1, 2] Kangerga & Bro. alone have appealed from that judgment. The failure of the court to allow interest and attorney's fee on the judgment for $1,600 and $413.65 and the refusal to find and foreclose a lien in their favor upon the real estate for the payment of

the latter sum are the first errors assigned. There are other assignments, which attack the refusal of the court to sustain exceptions to the appellees' original petition, which should first be considered. A party who seeks judicial annulment of a contract upon the ground that it is not permitted by law must allege facts which disclose its unlawful character. It is not every mortgage upon the homestead that is void. Valid incumbrances may be created for the purchase money and for improvements made thereon. Const. art. 16, § 50. This being a suit to cancel deeds solely upon the ground that they were designed to operate as a mortgage upon the homestead, it devolved upon the plaintiffs to allege facts showing that the mortgage was one not permitted by the Constitution. If their petition is not fatally defective in that respect, it is at least lacking in that clearness and certainty required for good pleading. We have concluded, however, that for all practical purposes the original petition of the appellees may be disregarded and this suit treated as one by the appellants to recover upon the notes executed in December, 1913, and shall discuss the issues from that standpoint. The refusal of the court to sustain the exceptions to the plaintiffs' original petition may be treated as immaterial and harmless.

[3] According to the pleadings of the appellants and the evidence offered by them, the consideration for the four notes, aggregating $3,000 and executed by Willard on December 4, 1913, was made up of the principal and interest paid to Spivey by the appellants at Willard's instance on the purchase-money debt and $413.65 for money and material furnished Willard by appellants to make improvements upon his homestead some time prior to the date of the notes and deeds. It is not contended that any portion of those notes has since been paid; neither is there any pleading or evidence which tends to impeach their validity as personal obligations on the part of Willard. It follows, then, that a personal judgment for their full amount, together with interest and the stipulated attorney's fees, should have been rendered for the appellants against Willard. It is true the appellees pleaded in a general way that a portion, and probably all, of the Spivey debt had been paid, but the transactions relied upon to prove such payments occurred before the four notes above referred to were executed. The principal controversy seems to be about how much of the original purchase money of the homestead was unpaid at the times those notes were given, and formed a part of their consideration. The action of the court below in canceling those notes and in refusing to consider them as a basis for a personal judgment for any portion of the debt which they evidenced indicates that for some reason he regarded them as invalid personal obligations. The only argument suggested in the briefs of the appellees as supporting that conclusion is one founded upon the rule which applies to illegal contracts. Appellees insist that, inasmuch as it was shown that a portion of the consideration for the notes held by the appellants was not the original purchase-money debt, such notes were for that reason alone invalid and unenforceable for any amount. While the effort of the parties to create a lien upon the homestead for the entire debt evidenced by the notes was ineffectual because a part of the real consideration was something for which the homestead could not be incumbered, that fact alone did not invalidate the notes or affect the lien for that part of the consideration which represented the original purchase-money debt. Girardeau v. Perkins, 59 Tex. Civ. App. 552, 126 S. W. 634. The rule invoked by the appellees which holds that, if a portion of the consideration of a contract is illegal, the courts will refuse to enforce any part of the agreement, applies to contracts which are contra bonos mores, or which violate some penal statute designed to prevent the making of such agreements. A mortgage upon a homestead is not an immoral contract, nor is it one which violates any penal statute. The constitutional inhibition against mortgaging the homestead was made for the pecuniary benefit of the party who may claim such an exemption. If there were any occasion for a discussion of this proposition, ample authority to support it might be found in that line of cases which enforce liens against the homestead when created under circumstances which conceal from the mortgagee the homestead claim. Moerlein v. Scottish Mortgage Co., 9 Tex. Civ. App. 415, 29 S. W. 162, 948; Steves v. Smith, 49 Tex. Civ. App. 126, 107 S. W. 147; Scottish Co. v. Scripture, 40 S. W. 215.

[4-7] To the extent which the consideration expressed in the notes sued on by the appellants represented the original purchase-money debt due upon the homestead, the notes expressed a valid lien enforceable in this suit. Black v. Rockmore, 50 Tex. 88; National Bank v. Taylor, 91 Tex. 78, 40 S. W. 880, 966; Wasson v. Davis, 34 Tex. 159; Swain v. Cato, 34 Tex. 395; Glaze v. Watson, 55 Tex. 568; Clark v. Burke, 39 S. W. 306. One who pays for the vendee the purchase money due upon the homestead takes by an equitable assignment, if not by an actual transfer, the debt which discharges, and is subrogated to the lien which his vendor held. Flanagan v. Cushman, 48 Tex. 241; Pinchain v. Collard, 13 Tex. 333; Joiner v. Perkins, 59 Tex. 302. If the debt is thereafter extended by the giving of new notes, the old lien may be perpetuated without losing any of its validity. Lippencott v. York, 86 Tex. 283, 24 S. W. 278; Watkins v. Spoull, 8 Tex. Civ. App. 427, 28 S. W. 356. The jury in this instance found that on the 4th day of December, 1914, the date upon which the notes in

controversy were executed, there was still due the appellants the sum of $1,600 for what they had previously paid upon the purchase-money notes to Spivey. Upon that finding the appellants were entitled to have a judgment foreclosing the vendor's lien for that amount, together with the interest which had accrued up to the date of trial at the rate of 8 per cent. per annum, and 10 per cent. attorney's fees. Honaker v. Jones, 115 S. W. 650. Counsel for appellees justify the refusal of the court to allow interest and attorney's fees upon the ground that appellants can claim a lien in this suit only by subrogation, and that such lien is limited to the sum that will reimburse the appellants for what they actually expended in discharging the original purchase-money debt. As supporting that proposition they refer to Cleveland v. Carr, 40 S. W. 407. In that case it was held that, where guarantors on notes secured by a trust deed paid the notes and took an assignment of them, together with the deed of trust, their rights against the principal debtor were derived from subrogation, and not from the assignment, and their recovery from him was limited to the sum actually paid by them with legal interest, not the rate stipulated in the notes. That rule has no application to cases of this character. The appellants were not sureties or guarantors for Willard, nor parties in any form to his contract with Spivey, and consequently were under no legal obligation to answer for Willard's default. Their payment to Spivey was the consideration for the purchase of Willard's debt, not the discharge of a legal obligation. The rights which they acquired were measured not by what they had paid, but by what Spivey might have claimed from Willard had he remained the creditor. They are in the same attitude in which they would have been had Spivey transferred to them the original purchase-money debt by a written indorsement. Their payment to Spivey did not discharge the debt, but merely changed creditors.

[8] Where the consideration for the debt is the original purchase money, the form in which the lien to secure it is expressed or perpetuated is immaterial. The parties may, without violating any legal or constitutional provision, change the form of the mortgage after the making of the original purchase-money contract. A form which would have been valid in the first instance would not be invalid if thereafter adopted. The parties in this case had the right to agree upon and adopt any form they saw proper for perpetuating the debt and lien acquired by the appellants from Spivey; and the deeds in evidence, even though intended as a form of mortgage, were not for that reason void. They were valid as to what remained of Willard's original purchase-money obligation, together with the accumulated interest and at-

torney's fees thereon. We therefore conclude that the court erred in holding to the contrary.

[9] Under the facts as found the appellants were not entitled to the foreclosure of a lien for the $413.65. This portion of the consideration of the notes held by the appellants is for money and material furnished for improvements put upon the premises after the homestead right had attached. To be valid such liens must be created before the material is furnished. Taylor v. Huck, 65 Tex. 238; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832; Lippencott v. York, supra. It is urged by the appellants that they were the real owners of the property at the time the improvements were made. As supporting that contention, they refer to that portion of the evidence which shows a conveyance made to them by Spivey, in which the latter transferred his lien and all the legal and equitable rights he then held in the property. That conveyance merely vested in the appellants the lien and the superior legal title remaining in the vendor which enables him to rescind the contract upon default in the payment of the purchase money. Until a rescission occurred the real beneficial ownership of the property was in the vendee, Willard. The court correctly refused to allow a foreclosure for this sum.

The appellants insist that the judgment in this case should be reversed because of the failure of the court to grant a new trial on account of the newly discovered evidence. This evidence consisted substantially of testimony which would tend strongly to impeach or contradict the testimony of the appellee Willard as to payments for which he received credit in the findings of the jury. While the character of this newly discovered evidence and the circumstances surrounding its discovery and subsequent presentation as a basis in the motion for a new trial are not, when standing alone, sufficient to require the granting of a new trial, yet we are inclined to think, upon a review of the entire record, that the ends of justice would be better subserved by reversing and remanding the cause, in order that it may be tried in accordance with the views herein expressed.

The judgment will therefore be reversed, and the cause remanded for a new trial.