639 F.2d 1289
 9 O.S.H. Cas.(BNA) 1387
 MINERAL INDUSTRIES & HEAVY CONSTRUCTION GROUP, Brown & Root,
Inc., Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, & Ray
Marshall, Secretary of Labor, Respondents.
 No. 79-2224.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit A
 March 19, 1981.
 Powell, Brown & Maverick, William L. Bedman, Joe M. Stevens, Jr., Houston, Tex., for petitioner.
 Anthony J. Steinmeyer, Dept. of Justice, Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol., Allen H. Feldman, Acting Counsel for Appellate Litigation, John A. Bryson, John R. Bradley, U. S. Dept. of Labor, Washington, D. C., Marshall Harris, Regional Sol., U. S. Dept. of Labor, Philadelphia, Pa., for respondents.
 Petition for review of an Order of the Occupational Safety and Health Review Commission.
 Before GOLDBERG, POLITZ and SAM D. JOHNSON, Circuit Judges.
 GOLDBERG, Circuit Judge:
 
 
 1
 Mineral Industries & Heavy Construction Group, Brown & Root, Inc. ("Brown & Root") has filed this petition, pursuant to § 11(a) of the Occupational Safety and Health Act ("Act"), 29 U.S.C.A. § 660(a) (West 1976), for review of an order of the Occupational Safety and Health Review Commission ("OSHRC"). The order affirmed a penalty of $8100 against Brown & Root for the serious and willful violation of a regulation governing the operation of certain earthmoving machinery. In contesting the OSHRC order, Brown & Root seems to argue that "accidents will happen." However, finding the OSHRC choice of maxims "better safe than sorry" and "an ounce of prevention is worth a pound of cure" to be more fitting when regulating the operation of hazardous construction equipment, we affirm the decision of the OSHRC.
 
 I. LAYING THE FOUNDATION: BACKGROUND FACTS
 
 2
 During 1975, Brown & Root was engaged in a three year construction project of the north yard of the Newport News Shipbuilding and Drydock Company in Newport News, Virginia. On May 14, 1975, Brown & Root's general foreman, Earl Joyner, was struck and killed by a caterpillar scraper. At the time of the accident, the scraper was being backed into a reclamation pit from which Joyner was directing the earthmoving operation.
 
 
 3
 As a result of the tragedy, two Occupational and Safety compliance officers conducted an investigation of the Brown & Root construction site, and issued a citation. The company contested the citation and an administrative hearing was conducted. The administrative law judge ("ALJ") hearing the case concluded that Brown & Root had committed a serious and willful violation of safety regulation 29 CFR 1962.602(a)(9)(ii)[1] by permitting the scraper involved in the accident to be operated in reverse without the use of a reverse signal alarm or employee signals.
 
 
 4
 On appeal from the decision of the ALJ, OSHRC concluded that there was insufficient evidence to establish a violation in connection with the fatal accident of May 14. However, OSHRC also found that Brown & Root had violated the same standard several times prior to May 14, and that the issue of their compliance with the standard during times prior to the accident had been fully and fairly litigated. Thus, OSHRC amended the pleadings to allege a violation of the safety standard "on or before May 14." Based on the amended pleadings, OSHRC affirmed the finding of a serious and willful violation.
 
 
 5
 Brown & Root has raised three issues on appeal in this Court. The company first argues that the amendment of the original complaint was improper; therefore, the OSHRC conclusion that there was insufficient evidence on which to find a violation based on the original complaint should be dispositive of the case. Second, Brown & Root claims that even assuming the amended complaint to be proper, the OSHRC erred in finding a violation "on or before May 14." Finally, Brown & Root suggests that there is insufficient evidence to find that the alleged violation was committed "willfully."
 
 
 6
 II. ADDING A NEW WING: THE RULE 15(b) AMENDMENT
 
 
 7
 The Commission amended the complaint pursuant to Federal Rule of Civil Procedure 15(b).[2] In allowing for the amendment of pleadings, Rule 15(b) is designed to ensure that poor foresight on the part of scriveners is not converted into tunnelvision on the part of judges. The amendment process prevents "technicalities" in pleading from impeding the just resolution of the merits of cases. See United States v. Stephen Brothers Line, 384 F.2d 118, 124 (5th Cir. 1967) (quoting Foman v. Davis, 371 U.S. 178, 181 (1962)). To effectuate the policy underlying Rule 15(b), and in recognition of the spirit of the Federal Rules of Civil Procedure, this Circuit has pursued "a course of strong liberality * * * in allowing amendments." United States v. Stephen Brothers Line, supra, 384 F.2d at 124-125 (quoting Hall v. National Supply Co., 270 F.2d 379, 383 (5th Cir. 1959)); see Wansor v. George Hantscho Co., Inc., 570 F.2d 1202, 1208 (5th Cir.), cert. denied, 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978).
 
 
 8
 More importantly for the present case, it is well settled that administrative pleadings are "liberally construed" and "easily amended." NLRB v. Fant Milling Co., 360 U.S. 301, 79 S.Ct. 1179, 3 L.Ed.2d 1243 (1959); Usery v. Marquette Cement Manufacturing Co., 568 F.2d 902, 906 (2nd Cir. 1977); National Realty and Construction Co., Inc. v. Occupational Safety and Health Review Commission, 489 F.2d 1257, 1264 (D.C.1973). An agency charged with the duty of enforcing a regulatory act must be afforded some leeway to discover by virtue of the evidence presented at its hearing the precise nature and scope of the violations committed by a defendant company. As one commentator has noted "The most important characteristic of pleadings in the administrative process is their unimportance. And experience shows that unimportance of pleadings is a virtue." 1 K. Davis, Administrative Law Treatise § 8.04 at 523 (1958).
 
 
 9
 However, neither reliance on a "course of liberality" nor recognition of the exigencies of effective agency operation can serve as a subterfuge for the unfair or prejudicial application of Rule 15(b). See International Harvester Credit Corp. v. East Coast Truck, 547 F.2d 888, 890 (5th Cir. 1977). Therefore, pleadings should be amended only when evidence relevant to an unpleaded issue has been introduced at trial, without objection, from which consent to the consideration of that issue can be implied. See International Harvester Credit Corp. v. East Coast Truck, supra, 568 F.2d at 890; Usery v. Marquette Cement Manufacturing Co., supra, 568 F.2d at 906. Additionally, an implied amendment of the pleadings should not be permitted where it would operate to deny a party a fair opportunity to present evidence material to newly-added issues. International Harvester Credit Corp. v. East Coast Truck, supra, 547 F.2d at 890.
 
 
 10
 Applying these broad standards and policy considerations to the present case, it is clear that the OSHRC amendment alleging a violation "on or before May 14" was completely proper. Throughout the course of the administrative hearing, both parties contested the existence and sufficiency of a company workrule regarding the reverse operations of scrapers, as well as the procedures for backing-up actually employed by scraper drivers during the construction project. Brown & Root cross-examined the three scraper drivers called as witnesses by the Secretary; during each cross-examination, the driver was quizzed on the training and instruction offered by the company concerning the reverse operation of scrapers. The drivers were also questioned on the procedures that they generally used in backing-up the scrapers on the project. Additionally, the company called the project manager and the safety supervisor to testify as to the extent of the Brown & Root safety program and to assess the degree of compliance by the project's scraper drivers with the relevant safety standard. At no time during the course of the administrative proceedings did Brown & Root object to the introduction of evidence on the grounds that such evidence was related to issues outside the scope of the pleadings. Moreover, even after the issuance of the OSHRC's decision and the amendment of the complaint, the company failed to move to have the case reconsidered or remanded to the administrative law judge for the presentation of evidence on the unpleaded issue.
 
 
 11
 Our finding of implied consent to an amendment of the pleading is further strengthened by the company's attempt to prove the unpleaded defense[3] of "isolated occurrence" or employee misconduct. In order for Brown & Root to establish this defense, the company was required to prove that any reverse operation of a scraper without a signaler was the result of idiosyncratic employee behavior which contravened company policy and practice. Murphy Pacific Marine Salvage Co., 1974-1975 CCH OSHD P 19,205; General Dynamics v. Occupational Safety and Health Review Commission, 599 F.2d 453 (1st Cir. 1979). By raising this defense, Brown & Root not only implicitly consented to trying the issues of the existence of a duly-enforced workrule and the ongoing employee compliance with such a rule, but indeed attempted to concentrate the entire litigation on the resolution of these questions.[4] There can be no doubt that the company's compliance with the safety standard "on or before May 14" was tried with the implied consent of both parties.
 
 
 12
 As to the second requirement of Rule 15(b) the absence of prejudice and unfair surprise Brown & Root has failed to point out, and this court cannot identify, any specific additional item of material evidence which the company could and would have produced had the complaint originally alleged a violation "on or before May 14." The OSHRC changed neither the applicable standard nor the legal theory of liability; the defenses available to Brown & Root remained the same despite the amendment. The OSHRC's decision to amend the complaint did not in any way prejudice Brown & Root.[5]
 
 
 13
 III. FINDING A SINGLE CRACK IN A SHATTERED WINDOW: LOCATING THE VIOLATION
 
 
 14
 As its second point of error, Brown & Root argues that the record reveals no specific instance in which the company knowingly violated the regulation, thereby subjecting a specific employee to a hazard. The company maintains that the violation therefore rests solely on its failure to adopt a workrule governing the reverse operation of scrapers, rather than on proof that a scraper was actually permitted to move backwards without a prior signal. They maintain that the mere failure to adopt a workrule cannot constitute a violation of the Act.
 
 
 15
 The regulation at issue in the present case makes it a violation for an employer to permit the type of scraper involved in this case to be operated in reverse gear without the use of reverse signal alarms or employee signals. The OSHRC found that Brown & Root's scrapers were not equipped with a reverse alarm and were operated in reverse on a regular basis without the benefit of employee signals. Moreover, the OSHRC found that after the company specifically chose not to equip the scrapers with reverse alarms, it failed to implement specific rules requiring the use of signalmen. The company's failure to take any steps to comply with the regulation, combined with repeated examples of noncompliance, clearly constitutes a knowing violation of 29 CFR 1926.602(a)(9) (ii).
 
 
 16
 No different result is required by the company's claim that there was no specific showing of employee access to the hazard. The OSHRC need not prove that a given employee was actually endangered by the unsafe condition, but only that it was reasonably certain that some employee was or would be exposed to that danger. Gilles v. Cotting, Inc., 1975-1976 CCH OSHD P 20,448 (1976). Babcock & Wilcox Co. v. Occupational Safety and Health Review Commission, 622 F.2d 1160, 1165 (3rd Cir. 1980). The goal of the Act is to prevent the first accident, not to serve as a source of consolation for the first victim or his survivors. Hence, no proof of specific instances where employees were exposed to the hazardous condition is necessary to support the finding of a violation.
 
 
 17
 In the present case, there is substantial evidence to support the finding of employee access to the danger. The scrapers were operated throughout a congested worksite, and were often used in conjunction with other equipment. Foremen, like Earl Joyner, often directed the operations amidst the movement of these mechanical behemoths. Given the frequency of the violation, it is virtually certain that employees were exposed to the hazard.
 
 
 18
 IV. IGNORING THE ARCHITECT'S PLANS: THE WILFUL VIOLATION
 
 
 19
 Finally, Brown & Root argues that even assuming the existence of a serious violation, there is no evidence that such violation was committed "willfully." A reversal of the finding of wilfulness would mandate a remand to the OSHRC for a reassessment of damages.[6]
 
 
 20
 The Fifth Circuit in Georgia Electric Co. v. Marshall, 595 F.2d 309, 319 (5th Cir. 1979), enunciated the definition of "wilful" violation: "Thus, for OSHA purposes, we define a wilful violation as one involving voluntary action, done either with intentional disregard for, or plain indifference to, the requirements of the statute." Therefore, if substantial evidence supports the conclusion that Brown & Root intentionally disregarded or was indifferent to the requirement that scrapers being operated in reverse must be equipped with reverse alarms or utilize employee signals, we are required to affirm the finding of "wilfulness."
 
 
 21
 During a safety meeting, the management of Brown & Root specifically discussed the requirements of the regulation at issue, and the potential hazards presented by the reverse operation of machinery with obstructed views. The company expressly decided to equip all machinery with obstructed views, except scrapers, with a reverse alarm in order to comply with the Act. Having made an express decision not to equip the scrapers with reverse alarms, Brown & Root was required to make its best effort to ensure that a signal was provided to each operator when a scraper was moved backwards. Yet, the unrebutted evidence indicates that the company instituted no workrules requiring signalling before the reverse operation of scrapers, and indeed provided no instructions or training regarding the operation of scrapers. Additionally, company officials failed to observe the actual operation of the scrapers on the construction site. Rather, Brown & Root chose to rely on its constant repetition of the warning "Be careful" as its only safety measure. The mere admonition to "Be careful" combined with reliance on the "common sense" of the employees is inadequate to meet the safety requirements of the Act. See Georgia Electric Co. v. Marshall, supra, 595 F.2d at 320. The conscious decision not to install reverse alarms on scrapers together with the failure to institute and enforce a program of employee signalling clearly constitutes "plain indifference to" or "intentional disregard of" the regulation. See Intercounty Construction Co. v. Occupational Safety & Health Review Commission, 522 F.2d 777, 779-780 (4th Cir. 1975), cert. denied, 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976). The OSHRC was therefore correct in finding a "wilful" violation of the Act.
 
 V. THE COMPLETED STRUCTURE: CONCLUSION
 
 22
 The OSHRC correctly concluded that the evidence produced at the administrative hearing clearly established that Brown & Root had committed a willful and serious violation of the regulation governing the reverse operation of scrapers. The OSHRC also correctly concluded that an amendment of the pleadings to conform to the evidence of violations was proper pursuant to Federal Rule of Procedure 15(b). Finding no error in the proceeding below, the decision of the OSHRC is
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 29 CFR 1962.602(a)(9)(ii) provides:
 Material handling equipment.
 (a) Earthmoving equipment; General
 (9) Audible alarms
 (ii) No employer shall permit earthmoving or compacting equipment which has an obstructed view to the rear to be used in reverse gear unless the equipment has an operational reverse signal alarm distinguishable from the surrounding noise level or an employee signals that it is safe to do so.
 It is clear that the scrapers involved in the present case qualify as "earthmoving equipment" with an "obstructed view to the rear" and thus come within the purview of the regulation.
 
 
 [2]
 Federal Rule of Procedure 15(b) provides, in pertinent part:
 Rule 15. AMENDED AND SUPPLEMENTAL PLEADINGS
 (b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues....
 The Federal Rules of Civil Procedure are made applicable to OSHRC proceedings, by Rule 2(b) of the OSHRC's Rules of Procedure, 29 CFR 2002.2(b).
 
 
 [3]
 Brown & Root failed to plead the affirmative defense of isolated occurrence, but this issue was tried before the administrative law judge based on implied consent. In its post-hearing brief, the company stated: "The affirmative defense of isolated occurrence has been met by the record made in this case by Respondent." The company continued to press the issue, and to rely on the evidence relating to that defense, in seeking a reversal by the full OSHRC
 
 
 [4]
 As the First Circuit noted in General Dynamics:
 When the employer's defense is that the hazard occurred as a result of unauthorized and idiosyncratic behavior by its employees, the issue of an employer's training and supervision of its employees automatically arises as part of the employer's showing that it took all feasible steps to avoid the occurrence of the hazard.
 599 F.2d at 459.
 
 
 [5]
 After their inspection of the Brown & Root construction site, the compliance officers also cited the company for a nonserious violation of an inoperative horn on May 14. Brown & Root was fined ninety dollars. The company admitted that the horn was inoperative on May 16, and the complaint was amended by the OSHRC to allege the proper date. It is not clear whether Brown & Root is petitioning for review of the citation; however, there is no doubt that the amendment of the complaint to change the date of the violation from May 14 to May 16 was proper
 
 
 [6]
 Under the Act, a willful violation is punishable by a maximum fine of $10,000, 29 U.S.C.A. 666(a), while a nonwillful violation may only be assessed a maximum of $1,000, 29 U.S.C.A. 666(b)