In re Anita D. MILLER, Debtor.

**AMERICAN GUARANTY, INC., Movant,**

v.

**Anita D. MILLER and W. Steve Smith, Trustee, Respondents.**

Bankruptcy No. 85–02069–H1–4.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Dec. 5, 1985.

Preston L. Dodson, Houston, Tex., for movant.

Lonnie B. Davis, Houston, Tex., for debtor.

W. Steve Smith, Houston, Tex., trustee.

## MEMORANDUM OPINION AND ORDER

MANUEL D. LEAL, Bankruptcy Judge.

The issue presented is whether the lien of American Guaranty, Inc., is valid and enforceable under Texas law. The lien was fixed on Debtor's homestead at her specific request for the express purpose of allowing the Debtor to purchase the equitable lien awarded to her ex-husband in the divorce decree from the state family court. American Guaranty, Inc., (hereinafter "AGI") loaned Debtor the money and now seeks

relief from the automatic stay to pursue its state court remedies.

Debtor, Anita Miller, challenges the validity of AGI's lien and asserts that the lien is invalid for it was not fixed in accordance with the Constitution of the State of Texas, Art. 16 § 50 and moves the Court to deny AGI's motion in all respects. This Court concludes that the lien extends only to the property acquired with the purchase money proceeds, the undivided one-half interest formerly owned by Anita Miller's husband, regardless of the terminology found in the loan documents. In asserting this lien, the Court finds, based on the value given to the collateral on which AGI can properly assert a lien, that the stay will terminate as to the Fort Bend property and the one-half interest in the homestead.

## FACTUAL BACKGROUND

Anita D. Miller filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code on April 1, 1985. On February 23, 1981, approximately four years prior to her bankruptcy filing, Anita Miller was divorced from her husband, Edwin Miller, by decree of the 247th Family District Court, Harris County, Texas. The divorce decree awarded the homestead property, known as 5311 Tidewater, Houston, Texas, to Anita Miller. The homestead was purchased during the marriage by funds advanced from Kassler & Co. Kassler & Co. had and currently holds a first lien [1] on the homestead with a balance due and owing of $10,500.00 as of the date of the motion. Edwin Miller was awarded an equitable lien on the homestead in the amount of $12,000.00 and interest in the same divorce decree. The decree provided that the equitable lien was to be paid to the husband after the occurence of any of the following:

1. Home is sold.
2. Wife remarries.
3. Youngest child turns eighteen (18) years of age.

4. Home ceases to be principal place of residence.

On August 20, 1983, the equitable lien became due and owing under the terms of the divorce decree because the Millers' youngest child turned eighteen years of age. Anita Miller did not have the funds to satisfy this lien and borrowed the money from AGI. On August 6, 1984, AGI and the Debtor executed a six month balloon note in the amount of $18,665.00 with six monthly interest payments and its entire balance due at the end of six months. As security for this loan, Anita Miller executed two deeds of trust; one on her homestead property and the other on a piece of real property described as a one-half acre tract of land in Fort Bend County, Texas. The deeds of trust were properly perfected on August 7, 1984 by recording in the county clerks' office. The deed of trust on the homestead specifically stated:

> The Note hereby secured and this Deed of Trust represent funds advanced to Grantor, at her special instance and request, used for the payment, satisfaction and release of an equitable lien on the hereinabove described real property, which lien was created and given by Grantor to Edwin Miller in a Decree of Divorce dated February 23, 1981 in payment for his undivided interest in the above-described real property.

> In the event the hereinabove described property, or any interest therein, is sold, transferred or conveyed in any manner, either voluntary, judicial or made under the terms of this Deed of Trust, the entire unpaid balance of the Note hereby secured, both principal and interest, may, at the option of the holder thereof, be declared immediately due and payable in full.

This same deed of trust contained the following subrogation clause:

> It is agreed that the lien hereby created shall take precedence over and be a prior

---

1. It must be noted that there was no evidence introduced to substantiate this first lien. The parties did not contest its existence.

lien to any other lien of any character whether vendor's, materialmen's or mechanic's lien hereafter created on the above described property, and in the event the proceeds of the indebtedness secured hereby as set forth herein are used to pay off and satisfy any liens theretofore existing on said property, then Beneficiary is, and shall be, subrogated to all of the rights, liens and remedies of the holders of the indebtedness so paid.

At the time Anita Miller obtained the funds and executed the loan documents, her ex-husband had commenced a lawsuit to foreclose his interest in the homestead. Some of the funds advanced from AGI were used to pay off the ex-husband's lien on the homestead *in toto*. On the day that the loan documents were executed, record title to the homestead was in both Anita & Edwin Miller's names. When the funds were advanced, the equitable lien of Edwin Miller's was satisfied and he executed a warranty deed to the Debtor conveying all of his rights in the premises to Anita Miller.

Later Anita Miller filed her chapter 7 bankruptcy petition and three months thereafter AGI brought a motion for relief from stay on July 19, 1985. The chapter 7 trustee requested a hearing on July 26, 1985 and filed his response on August 12, 1985. Debtor also filed her opposition to the motion on July 29, 1985. On October 2, 1985, at the final hearing on this motion, the parties stipulated to the authenticity of the promissory note and two deeds of trust held by AGI in open court. Stipulations were also reached on the fact that the 5311 Tidewater property was Debtor's homestead for all times relevant to this motion and that "a portion" of the funds advanced by AGI were used to satisfy Edwin Miller's equitable lien.

Evidence was taken on the value of AGI's collateral. AGI's president valued the homestead at $35,000.00 and the Fort Bend property at $7500.00 both less costs of sale. Debtor valued the homestead property at $43,000.00 based on a January 1984 appraisal. Debtor testified there was a $10,500.00 balance due to the first lienholder, Kassler & Co., on the homestead. Debtor defaulted in her payments and currently owes AGI $22,293.20 representing unpaid principal and accrued interest.

The Debtor contests the validity of AGI's lien on the homestead for the following reasons. First, the Debtor claims the lien was not fixed on Debtor's homestead for purchase money, improvements, or taxes and thus the lien is void under Art. 16 § 50 of the Texas Constitution. Second, the Debtor attacks the validity of the state court divorce decree claiming Edwin Miller's equitable lien is void because the state court failed to make a finding of fact on the value of his interest in the homestead at the time of the divorce. Finally, Debtor argues the loan is voidable under 11 U.S.C. § 548(a) as a fraudulent transfer.

## LEGAL DISCUSSION

### A. Jurisdiction and Nature of the Automatic Stay

Jurisdiction of the bankruptcy judge is dependent on the reference provision of 28 U.S.C. § 157 and the standing order for the Southern District of Texas. Under 28 U.S.C. 157(b)(1) the bankruptcy judge may enter appropriate orders and judgments in core proceedings. 28 U.S.C. § 157(b)(2)(G) provides that "motions to terminate, annul or modify the automatic stay" are core proceedings. These matters were referred to the bankruptcy judges by the standing order signed by the Chief District Judge of the Southern District of Texas on August 9, 1984.

Determination of the validity of AGI's lien involves the interpretation of state law. The 1984 Amendments provide that "a determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law." 28 U.S.C. 157(b)(3). Since the automatic stay is the major mechanism by which the Bankruptcy Code provides the debtor with a breathing spell from creditors, the homestead determination must be

made in order to properly determine the basic issues raised by the stay motion.

The automatic stay provision of the bankruptcy code operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title ...

11 U.S.C. § 362(a)(1) (1984).

The scope of the automatic stay is undeniably broad. *In re Bialac*, 712 F.2d 426, 431 (9th Cir.1983). Its purposes are to "protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among creditors by forestalling a race to the courthouse." *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir.1985). "The automatic stay prevents a multijurisdictional rush to judgment whose organizing principle could only be first-come-first served, and protects the interests of all creditors by treating like-situated claimants equally." *In re Mortgageamerica Corp.*, 714 F.2d 1266, 1274 (5th Cir.1983) *quoting* H.R. Rep. No. 45–595 at 340, 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6296–97.

11 U.S.C. § 362(d) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d) (1984)

The automatic stay operates to protect property of the estate as defined in 11 U.S.C. § 541. This section states that the commencement of a bankruptcy case creates an estate which consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541 (1984).

■ At hearings on the automatic stay, ordinarily, the only issue will be lack of adequate protection of the creditor's interest, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause for relief from stay. S.Rep. No. 989, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5841. The issues involved in a trial under § 362 are (1) does the plaintiff creditor have a valid lien? (2) what is the amount of the indebtedness against the collateral? (3) what is the value of the collateral? (4) is the property necessary to an effective reorganization? and: (5) is the creditor adequately protected? *In re Born*, 10 B.R. 43, 45 (Bankr.S.D.Tex.1981).

## B. Validity of American Guaranty's Lien

Debtor challenges the validity of AGI's lien because it was not fixed on Debtor's homestead for purchase money, improvements or taxes. Art. 16 § 50 of the Texas Constitution provides:

Sec. 50. The homestead of a family, or of a single adult person shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead;

nor may the owner or claimant of the property claimed as homestead, if married, sell or abandon the homestead without the consent of the other spouse, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void. This amendment shall become effective upon adoption.

Tex.Const. art 16, § 50 (Vernon Supp.1985).

The purpose of the homestead exemption is to protect the "possession and enjoyment of the individual in property which is used as his or her home". *In re Claflin*, 761 F.2d 1088, 1091 (5th Cir.1985). This policy "militates strongly against the establishment of any lien which is not created according to statutory and constitutional requirments". *In re Daves*, 770 F.2d 1363, 1367 (5th Cir.1985). A creditor will be deprived of its lien solely because of the failure to follow the Constitution and statutory provisions with reference to the fixing of the lien upon the homestead. *Id.* at 1369. (quotations omitted). A valid lien cannot be created on homestead property other than in strict compliance with the requirments of the statutes and constitution. *Id.* at 1368. Unless the facts of this case bring it under one of the narrow exceptions contained in the Constitution of this state, American Guaranty's lien is invalid and determination of the issue would be foreclosed by Art. 16 § 50 of the Texas Constitution. *Woods v. West*, 37 S.W.2d 129, 131 (Tex.Comm.App.1931).

■ A threshold issue, raised by the Debtor, is whether the equitable lien awarded to the husband in the divorce decree must be abstracted in order to be perfected. See Tex.Prop.Code §§ 52.001 et. seq. (1984) formerly Tex.Rev.Civ.Stat.

Ann. Arts. 5447 & 5449 (Vernon, 1958). The answer is no. Texas courts have held that an equitable lien created by the domestic relations court is an "equitable lien and not a judgment lien. The lien arose when the divorce decree was rendered, and because it is not a judgment lien, its existence is not dependent on the filing of the abstract of judgment." *Day v. Day*, 610 S.W.2d 195, 198 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.).

■ When the equitable lien matured, Edwin Miller had the right to foreclose if the lien was not paid. In fact, Edwin Miller had instituted foreclosure proceedings due to the Debtor's failure to pay. Debtor produced no evidence that she attacked the validity of Edwin Miller's equitable lien and right to foreclosure at this time.

■ In order for American Guaranty's lien to be valid, the lien must be for purchase money, either the straight purchasing of an interest in real property or a vendor's lien. The distinction between a vendor's lien and purchase money lien is that in a vendor's lien situation, the vendor retains a security interest in the property securing the purchase money debt while in the purchase money situation, a lending company loans the purchase money to a vendee who in turn conveys the property in trust to secure the repayment money. *Blaylock v. Dollar Inns of America*, 548 S.W.2d 924, 932-33 (Tex.Civ.App.—Tyler 1977) aff'd in part, rev'd in part on other grounds, 576 S.W.2d 794 (Tex.1978). The Court holds that the evidence supports both theories that AGI purchased Edwin Miller's interest which was a valid vendor's and/or purchase money lien on the one-half interest which he sold to Anita Miller in the divorce decree.

To the extent that the consideration expressed in the divorce decree represented the original purchase money debt due upon the homestead, there exists a valid lien. *Kangerga & Bros. v. Willard*, 191 S.W. 195, 198 (Tex.Civ.App.—Texarkana 1916).

Until the purchase money is paid the purchaser does not hold such estate as will

support the homestead right against the person to whom the purchase money was due. *Floyd v. Hammond,* 268 S.W. 146, 147 (Tex.Comm.App.—1925). When the Miller's originally purchased the homestead they borrowed funds from Kassler & Co. At this time Edwin Miller's community interest in the property arose. He owned a one-half interest in the property. When the divorce decree awarded Anita Miller possession of the homestead, the equitable lien was created to compensate Edwin Miller for his one-half interest in the original purchase and the corresponding lien incurred to Kassler & Co. To this extent, the funds advanced by AGI are purchase money of his community interest which vested immediately upon the parties purchasing the property. "When the consideration for the debt is the original purchase money, the form in which to secure it as expressed or perpetuated is immaterial." *Kangerga & Bros. v. Willard, supra* at 198.

Alternatively, Texas law holds that a vendor's lien is a lien for purchase money that can be properly fixed on a homestead. *McGoodwin v. McGoodwin,* 671 S.W.2d 880, 881 (Tex.1984). The rule of law is when no express lien is reserved in a deed and the full purchase money is not paid, a lien nevertheless arises by implication—in favor of the vendor to secure payment of the purchase money. *Id.* at 882. The *McGoodwin* case is distinguishable on its facts for that case involved a marital property settlement which was incorporated into a final divorce decree. In the property settlement, the wife had contracted to sell her interest to the husband in exchange for a sum certain. No lien was expressly created in the *McGoodwin* case. Nevertheless, the court held, "[The vendor's] lien arose by implication, as a natural equity creating a constructive trust in the vendee that he should not keep the estate of another without paying for it." *Id.* at 882.

In our case, there is only a divorce decree. Also, an equitable lien was expressly awarded in the divorce decree. But the reasoning enunciated by the Supreme Court of Texas as interpreted by the recent

Fifth Circuit Court of Appeals case of *In re Daves* as applied to these facts supports the view that the husband's equitable lien is to be deemed a vendor's lien. "The divorced wife had a vendor's lien against the undivided one-half interest in the property she 'sold' to her husband in the divorce settlement. Such an implied vendor's lien is superior to a claim of homestead by the vendee." *In re Daves,* 770 F.2d at 1370 quoting *McGoodwin* at 882. Similarly, this Court will imply such a vendor's lien to the one-half interest which Edwin Miller "sold" to Anita Miller in the divorce decree.

This Court perceives no injustice in extending the reasoning of the *McGoodwin* case to this set of facts. Texas courts routinely place an equitable lien on the separate property awarded in the divorce decree "with the concommitant right to foreclose and sell...." *Day v. Day, supra* at 198.

> The law classifies this remedy as one founded in equity, and the rights of the respective parties are to be determined by principles of equity, both as to the amount and the means of enforcing its payment. The application of these principles does not mean that a party is divested of title to real property. True, it may finally result in the loss of title if sold under execution, but the ultimate divestiture by foreclosure is essentially voluntary, since the owner has the option to prevent this by complying with the court's order to pay.

*Buchan v. Buchan,* 592 S.W.2d 367, 371 (Tex.Civ.App.—Tyler 1979, writ dism'd) (citations omitted). The *Buchan* court specifically held that courts have the authority to impose an equitable lien on the homestead "for the purpose of restoring to [the spouse] something akin to his interest in such property." *Id.* at 371. In our case, we hold that such an equitable lien with the concommitant right to foreclose was created in the divorce decree, and the same equitable principles which the Supreme Court of Texas applied in finding a vendor's lien by implication, would apply here, for Anita Miller "should not keep the es-

tate of another without paying for it." *McGoodwin v. McGoodwin, supra* at 882.

It is well settled law in the State of Texas that "one who discharges the vendor's lien upon lands—even homestead—either by paying as surety, or at the request of the debtor ... is entitled to be subrogated to the lien of the creditor to the extent of payment made." *Diversified Mortgage Investors v. Blaylock General Contractor,* 576 S.W.2d 794, 807 (Tex.1978) (quotations omitted); *Henke v. First Southern Properties, Inc.,* 586 S.W.2d 617, 621 (Tex.Civ. App.—Waco 1979) writ refused n.r.e.; see also *Texas Land & Loan Co. v. Blalock,* 76 Tex. 85, 13 S.W. 12, 13–14 (1890) (One who lends money which is used to discharge purchase money lien on homestead is subrogated to all the rights held by the holder of the note given for purchase money and in foreclosing the lien); *Kangerga & Bros. v. Willard,* 191 S.W. 195, 198 (Tex.Civ.App. —Texarkana 1916) ("One who pays for the vendee the purchase money due upon the homestead takes by an equitable assignment, if not by an actual transfer, the debt which discharges, and is subrogated to the lien which his vendor held."). Since the Court has ruled that Edwin Miller held a vendor's lien on the property and the parties have stipulated that the funds advanced by American Guaranty were used to purchase this vendor's lien, then the rights of American Guaranty are subrogated to the rights of Edwin Miller.

Debtor argues that American Guaranty cannot assert a valid lien through subrogation because movant did not plead this in its motion for relief from stay. Fed.R. Civ.P. 15(b), which this Court will apply under Bankr.Rules 9014 and 7015 states:

(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

The Fifth Circuit has stated that this rule

[I]s designed to ensure that poor foresight on the part of scriveners is not converted into tunnel vision on the part of judges. The amendment process prevents 'technicalities' in pleading from impeding the just resolution of the merits of cases. To effectuate the policy underlying Rule 15(b), and in recognition of the spirit of the Federal Rules of Civil Procedure, the Fifth Circuit Court of Appeals has pursued a course of strong liberality ... in allowing amendments.

*Mineral Inds. & Heavy Constr. Group v. Occupational Safety and Health Review Commission,* 639 F.2d 1289, 1292 (5th Cir. 1981). Courts have ruled that a party has impliedly consented to an unpleaded issue when testimony is received on the issue without objection, and there would be no surprise or prejudice by allowing such amendment. *Id.* at 1293; *Int'l Harvester Credit Corp. v. East Coast Truck,* 547 F.2d 888, 890 (5th Cir.1977); *June T., Inc. v. King,* 290 F.2d 404, 407 (5th Cir.1961).

The Court concludes that the Debtor impliedly consented to this issue when she introduced evidence at the hearing on her cross-examination of Mr. David Phelps, president of AGI, on whether or not the funds advanced were purchase money. Specifically, the following question by debtor's counsel:

Q: What kind of lien was it that you advanced the funds to pay for, Mr. Phelps?

A: It was a judicially awarded purchase money lien.

In addition, debtor's counsel had no objection to the introduction into evidence of the deed of trust signed by Anita Miller. This deed of trust specifically included a subrogation clause.

■ It is well settled law that the only lien which AGI could enforce against the homestead was the lien held by the ex husband, Edwin Miller. *McGoodwin v. McGoodwin, supra* at 883. Edwin Miller's lien was only against an undivided one-half interest of the homestead and it is only that interest that AGI acquired a lien upon by purchasing it "through the use of the loan proceeds." *In re White,* 47 B.R. 98, 100 (Bankr.S.D.Tex.1985). Since the funds used were sufficient only to allow the Debtor to purchase the husband's one-half interest, the lien is valid to this extent only. This is the only interest of AGI's that is deemed to be purchase money under Art. 16 § 50 of the Texas Constitution. Any other result would contravene the plain wording of the Texas Constitution. *In re Parker,* 27 B.R. 932, 934 (Bankr.N.D.Tex. 1983).

■ As further ground for declaring the lien invalid, Debtor attacks the validity of the divorce decree. This argument can be summarily rejected. This Court's jurisdiction is limited by Congress and it does not have any authority to sit as an appellate court reviewing the decisions of a state court. Even if we could, Debtor's point is clearly without merit. Texas law holds that when a complaining party fails to make a timely request under Tex.R.Civ.P. 298 for additional findings of fact, "that failure is a waiver of any error on the part of the court to make complete findings and a waiver of the right to complain of the trial court's failure to make certain findings deemed necessary by the appellant.... The party failing to make such a request has also been deemed to have waived the right to complain that the find-

ings which were filed were not full and complete." *Lettieri v. Lettieri,* 654 S.W.2d 554, 556 (Tex.Civ.App.—1983 writ dism'd). Debtor has produced no evidence of having challenged the adequacy of the divorce decree in the proper state forum.

■ As to the defense of fraudulent conveyance, we direct the debtor to the case of *In re Willis,* 48 B.R. 295 (S.D.Tex.1985) in which the Honorable Carolyn Randall stated that "a claim by the Debtor to avoid a fraudulent transfer could not have properly been urged in [movant's] action for relief from the stay." *Id.* at 304. The District Court adopted the view of *In re Coleman* when it stated "An action to avoid a fraudulent transfer is simply not a proper issue in a § 362 complaint." *Id.* quoting *In re Coleman,* 21 B.R. 832, 835–36 (Bankr.S.D. Tex.1982); see *In re Bialac,* 694 F.2d 625, 627 (9th Cir.1982). This Court is bound to follow the law. It will consider this cause of action when it is properly presented in the form of an adversary proceeding as required by Bankr.R. 7001.

### C. Lifting of the Automatic Stay

The Bankruptcy Code provides that the automatic stay shall be lifted for cause, including the lack of adequate protection to the moving party or if the debtor has no equity in the property and the property is not necessary for an effective reorganization. 11 U.S.C. § 362(d). The moving party has the burden of proof on the issue of the debtor's equity in the property while the debtor has the burden of proof on all other issues, including adequate protection. 11 U.S.C. § 362(g).

AGI alleges four grounds as "cause" for lifting the stay. First, Debtor has defaulted on her loan payments. Second, AGI is not adequately protected. Third, Debtor filed her chapter 7 petition in bad faith, and, finally, unreasonable delay. The only issue this Court will entertain is adequate protection for no evidence was introduced by the movant on its other allegations which constitute cause.

Debtor did not plead that AGI was adequately protected. No offer of adequate protection was forthcoming at the hearing held on October 2, 1985. Accordingly, the Debtor has failed in its burden to offer adequate protection as required by § 362(g). *Matter of Clarkstown Transmissions Corp.*, 45 B.R. 807, 810 (S.D.N.Y. 1985); *In re Klutzaritz*, 46 B.R. 368, 370 (Bankr.E.D.Pa.1985); *In re Trius Corp.*, 47 B.R. 3, 5 (Bankr.S.C.1984). When a debtor fails to present sufficient evidence concerning the issue of adequate protection at the trial the burden of § 362(g) necessitates a modification of the automatic stay. *In re GSVC Restaurant Corp.*, 3 B.R. 491, 494 (Bankr.S.D.N.Y.) *aff'd* 10 B.R. 300 (S.D.N.Y.1980). Since Debtor did not plead or offer any adequate protection package at the trial, this Court holds that the stay is to terminate for cause as to the movant AGI and its collateral.

Therefore, it is ORDERED, ADJUDGED and DECREED that the automatic stay will terminate as of this date as to the Fort Bend County property and the one-half interest in Debtor's homestead which was purchased from her husband, Edwin Miller, and further orders AGI to amend their pleadings to conform to the evidence presented.